AO 106 (Rev. 04/10) Application for a Search Warrant

Case 2:17-sw-00882-DB   Document 1   Filed 10/10/17   Page 1 of 18

SEALED

FILED
OCT 10 2017
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of: <br><br> The residence located at 6660 Grizzly Flat Road, Somerset, California, as further described in Attachment A-1. | ) ) ) ) ) ) ) Case No. <br><br> 2:17 SW 0882 DB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A-1, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 1) 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to Distribute and to Possess w/ Intent to Distribute Controlled Substances |
| 2) 21 U.S.C. § 841(a)(1) | Distribution and Possession w/ Intent to Distribute Controlled Substances |
| 3) 21 U.S.C. § 843(b) | Use of the U.S. Mail to Facilitate a Drug-Trafficking Offense |

The application is based on these facts:

**See Affidavit of U.S. Postal Inspector Jason P. Bauwens, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __14__ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason P. Bauwens, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 10, 2017

_____
*Judge's signature*

City and state: Sacramento, California

Hon. Deborah L. Barnes, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Jason P. Bauwens, Postal Inspector with the U.S. Postal Inspection Service, first being duly sworn, declare and state as follows:

## Background and Experience

1.      I am a Postal Inspector with the U.S. Postal Inspection Service (USPIS). I am currently assigned to the Sacramento, California, office. My responsibilities include investigating criminal violations of federal and state law, including illegal narcotics and narcotics proceeds being sent through the U.S. Mail; money laundering; robbery and burglary of postal facilities; destruction of government property; theft/possession of stolen U.S. Mail; mail and bank fraud; and identity theft crimes.

2.      I have been employed as a federal law enforcement agent for over 15 years, during which I have graduated from several federal training academies. In 1998, I graduated from the National Park Service Law Enforcement Academy in Sylva, North Carolina, which was a 10-week police academy. In 2003, I graduated from the National Park Ranger Integrated Police Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, which was a 16-week police academy. Most recently, I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, which was a 12-week training program. Throughout my career, I have investigated over 1,000 cases involving criminal violations of federal, state, and tribal laws. I have instructed hundreds of hours of training related to the detection, identification, and investigation of narcotics trafficking. I have testified as a witness in various federal and state court proceedings. I have participated in multiple Title III wire intercepts regarding narcotics trafficking investigations and have worked with numerous confidential sources.

3.      Through my training, experience, and interaction with other experienced Postal Inspectors, Task Force Officers, and other drug-trafficking investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs; to collect and conceal drug-related proceeds; and to communicate with other participants to accomplish such objectives. I have received specialized training and instruction in narcotics investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, and drug identification. I have participated in and led numerous investigations targeting individuals and organizations trafficking marijuana, methamphetamine, heroin, cocaine and other controlled substances and narcotics proceeds. During the course of these investigations, I have become familiar with the manner in which drug traffickers conduct their illegal operations. I have written numerous search warrants related to drug trafficking investigations, drug proceeds investigations, and drug parcel interdiction.

4.      I am a "Federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

1

5.     Unless stated otherwise, I have personal knowledge of all of the matters set forth in this affidavit. To the extent any information in this affidavit is not within my personal knowledge, it was made known to me through my own review of the documents discussed in this affidavit and through reliable law enforcement sources, including discussions with other law enforcement officers assigned to this case. The conclusions and opinions set forth below are based on my experience and training as a U.S. Postal Inspector, and conversations I had with other law enforcement officers who are familiar with the facts and circumstances of this investigation. Because this affidavit is being submitted for the limited purpose of securing three separate search warrants, I have not included each and every fact known to me concerning this investigation. I have only set forth those facts that I believe are necessary and appropriate to establish probable cause for the search warrants requested herein.

## Scope of Requested Search Warrant

6.     This Affidavit is being submitted in support of a warrant to search the following:

    a.     The residence located at **6660 Grizzly Flat Road, Somerset, California** (TARGET LOCATION 1), as further described in Attachment A-1.

    b.     The residence located at **1000 Harnish Mine Road, Somerset, California** (TARGET LOCATION 2), as further described in Attachment A-2.

    c.     The person of **Josh MAIER**, provided that he is located in the Eastern District of California at the time this search warrant is executed. (*See* Attachment A-3.)

7.     TARGET LOCATIONS 1 and 2 are located in the Eastern District of California, and are further described in Attachments A-1 and A-2. At the time this warrant is executed, I believe that Target Subject Josh MAIER will also be located in the Eastern District of California.

8.     Based on the facts below, I believe that Josh MAIER is a principal co-conspirator in a drug-trafficking organization, through which controlled substances—and marijuana specifically—are manufactured in the Eastern District of California, and then shipped out of state via the U.S. Mails. I also believe that Josh MAIER and others are using their cellular telephones to facilitate their drug-trafficking activities. This affidavit therefore requests authority to search the locations described in Attachments A-1 and A-2, and the person of Josh MAIER described in Attachment A-3, to locate and seize the items described in Attachment B as evidence and instrumentalities of the following crimes:

    -     21 U.S.C. § 841(a)(1) – Distribution of, and Possessing with Intent to Distribute Controlled Substances.

    -     21 U.S.C. § 843(b) – Unlawful Use of the U.S. Mails in Furtherance of Narcotics Trafficking.

- 21 U.S.C. § 846 – Attempt or Conspiracy to Distribute, or to Possess with Intent to Distribute Controlled Substances.

## Background of Investigation

9.  In 2013, the U.S. Postal Inspection Service (USPIS) began investigating an interstate drug-trafficking organization (referred to hereafter as the "MAIER DTO") operating in and around Sacramento, California. Investigators have since determined that the MAIER DTO has been involved with the cultivation and interstate distribution of hundreds of pounds of marijuana since at least 2013. During this investigation, law enforcement has identified and/or interdicted numerous parcels suspected of containing marijuana, which originated from the MAIER DTO and were destined for out-of-state addresses, as well as numerous parcels suspected of containing marijuana-related proceeds that originated from out-of-state and were destined for addresses associated to the MAIER DTO in the greater Sacramento area.

10. In March 2013, Postal Inspectors interdicted an Express Mail parcel that was mailed from Larry Stapleton in Killeen, Texas, addressed to Josh MAIER, a principal figure in the MAIER DTO, in Sacramento, California. This parcel was searched pursuant to a warrant and found to contain $17,810 in U.S. currency. A subsequent search of Stapleton's Texas residence resulted in the recovery of large quantities of processed marijuana, firearms, and evidence and materials consistent with marijuana and marijuana-proceeds trafficking utilizing the U.S. Mail. In a post-*Miranda* statement, Stapleton identified MAIER as his source of supply for marijuana being shipped from California. Stapleton was arrested and convicted in Texas as a result of the investigation.

11. In 2015, as a part of a narcotics-trafficking investigation, the El Dorado County Sheriff's Office executed searches at MAIER'S residence located at 6815 Stanley Avenue in Carmichael, California, as well as at the residence located at 6660 Grizzly Flat Road in Somerset, California (TARGET LOCATION 1). As a result of the searches, law enforcement recovered over 400 pounds of marijuana, nearly $40,000 in U.S. currency and evidence of marijuana-trafficking to multiple states throughout the United States. At MAIER'S residence at 6815 Stanley Avenue, law enforcement found property ownership records linking MAIER to the properties located at 6660 Grizzly Flat Road in Somerset, California (TARGET LOCATION 1), and 1000 Harnish Mine Road in Somerset, California (TARGET LOCATION 2). Additionally, during a review of the cell phones seized during the searches, law enforcement located numerous text and voicemail messages referencing the quality and prices of marijuana, as well as USPS tracking numbers. The messages suggested that MAIER was involved with a large-scale marijuana distribution operation throughout the United States.

12. In October 2016, Postal Inspectors again started investigating large amounts of marijuana being shipped from Northern California to the Killeen, Texas, area. During the investigation, Postal Inspectors identified over twenty parcels shipped from the greater Sacramento area, destined for 4403 Secretariat Drive, Killeen, Texas, beginning on/about March 2015. The identified parcels were consistent in weight, size, and other profile characteristics, with parcels

3

containing controlled substances, specifically marijuana. After numerous surveillance operations, law enforcement observed the suspected marijuana parcels were being delivered to Larry Stapleton (*see* paragraph 10) at a nearby address on the same street.

13. On May 24, 2017, Postal Inspectors identified a parcel that had been mailed from Sacramento, California, a couple days earlier, and was destined for 4403 Secretariat Drive in Killeen, Texas. Following a positive alert on the parcel by a narcotics detection dog, Postal Inspectors executed a federal search warrant on the parcel and seized approximately eight pounds of marijuana from the parcel. On May 25, 2017, law enforcement conducted a controlled delivery of the parcel. Agents observed the parcel was delivered to Stapleton at his nearby residence in Ki.leen, Texas. Shortly after Stapleton accepted delivery of the parcel, law enforcement executed a search warrant on his residence. During the search, law enforcement recovered the parcel and marijuana, as well as over three thousand dollars in cash, firearms, and evidence of narcotics distribution. In a post-*Miranda* statement, Stapleton admitted most of the parcels he received from California contained six to eight pounds of marijuana in them. Stapleton stated for the past two years, all of the inbound marijuana parcels had been addressed and shipped to the address of 4403 Secretariat Drive, Killeen, Texas, but were actually delivered to his residence down the street. Stapleton said he was still getting all of his marijuana from the same supplier since 2013, who he identified as MAIER. Stapleton advised he still shipped the narcotic proceeds back to MAIER via the U.S. Mail. Stapleton said he typically pays MAIER $1,600 per pound of marijuana. Stapleton advised he shipped most of the money parcels back to MAIER, addressed to "P.O. Box 100, Fair Oaks, CA 95628." Stapleton advised that his primary method of contact with MAIER was by cell phone.

14. During the search warrant on May 25, 2017, law enforcement identified a parcel that had been mailed the previous day, destined for P.O. Box 100, Fair Oaks, California. Stapleton said that he mailed the parcel the previous day and it contained cash payment for marijuana sent by MAIER. Law enforcement in California intercepted the parcel and mailed it back to Postal Inspectors in Texas, in furtherance of the investigation. On May 31, 2017, following a positive alert on the parcel by a narcotics detection dog, Postal Inspectors executed a federal search warrant on the parcel and seized $4,040 in U.S. currency.

15. During a search of USPS records, at least 90 suspected narcotics-proceeds parcels had been delivered to P.O. Box 100, Fair Oaks, California, which originated from numerous different states between November 2015 and May 2017.

16. In June 2017, Postal Inspectors in California conducted a surveillance video review of numerous parcels that were mailed out of the Sacramento, California area, and addressed to 4403 Secretariat Drive, Killeen, Texas. As a result of the video review, Postal Inspectors observed that MAIER was the person on video who mailed two of the recent parcels to the Killeen, Texas address, including the parcel that was seized by law enforcement on May 24, 2017 that contained over eight pounds of marijuana.

4

17.     In June 2017, Postal Inspectors conducted a check of public and law enforcement databases, and confirmed that MAIER was listed as the owner on record of numerous properties in the greater Sacramento, to include MAIER's residence at 6815 Stanley Drive in Carmichael, California, as well as the properties at TARGET LOCATION 1 and TARGET LOCATION 2.

18.     On June 13, 2017, law enforcement conducted overflights of the properties owned by MAIER. During the overflights, law enforcement observed active marijuana cultivation sites were present at TARGET LOCATIONS 1 and 2.

19.     On June 29, 2017, Postal Inspectors flagged a parcel destined for P.O. Box 100, Fair Oaks, California, which was mailed from Nashville, Tennessee. Following a positive alert on the parcel by a narcotics detection dog, on June 30, 2017, a federal search warrant was executed on the parcel. During the execution of the search warrant, Postal Inspectors found $12,000 in U.S. currency within the parcel. The contents were not seized but instead, placed back into the parcel and re-sealed, in a manner that the recipient of the parcel would not be able to detect. The parcel was delivered to the post office box later the same day. During a review of the surveillance video present at the post office, Postal Inspectors observed MAIER was the person on video who accessed P.O. Box 100 using a USPS issued key and retrieved the parcel containing the $12,000.

20.     In August, 2017, Postal Inspectors received the results of lab testing from the parcel and its packaging contents of the seized marijuana parcel on May 24, 2017 in Killeen, Texas. The results showed that MAIER'S fingerprints were present on the internal packaging materials of the seized marijuana parcel.

21.     On October 3, 2017, law enforcement conducted a review of USPS records and confirmed that MAIER is listed as the most recent customer receiving mail at TARGET LOCATION 1. On October 4, 2017, law enforcement conducted a search in Thomson Reuters CLEAR, a proprietary public records database, and determined MAIER is the most recent resident associated with both TARGET LOCATIONS 1 and 2. On October 4, 2017, law enforcement conducted a follow up check of ParcelQuest records and determined MAIER is still the listed owner on record for TARGET LOCATIONS 1 and 2.

22.     On October 6, 2017, law enforcement conducted aerial surveillance over TARGET LOCATIONS 1 and 2. During the overflight, law enforcement observed multiple cultivation sites with fully mature marijuana plants were present at both TARGET LOCATIONS 1 and 2.

23.     Based on my knowledge of this investigation, I know that MAIER regularly communicates by cell phone and sms text messages to facilitate his interstate drug trafficking activities. I am also aware, based on my training and experience, that it is virtually impossible to conduct an interstate narcotic-distribution operation without using a wide range of electronic communication methods, to include but not limited to phone calls, cell phones, text messages, email, encrypted messaging applications, and dark web networks. I am also aware, based on my knowledge of and experience with this investigation, that MAIER and others involved in this interstate conspiracy of shipping narcotics, regularly track their packages electronically using

cell phones and computers to determine if the drugs/drug proceeds have made their intended destination or if they were intercepted by law enforcement. I know in doing so, MAIER and others leave a digital footprint, to include but not limited to, the IP (internet protocol) addresses associated with such electronic devices

24. I am aware based on my training, experience, and knowledge of this investigation, that persons involved with marijuana cultivation, marijuana trafficking, and the trafficking of marijuana proceeds through the U.S. Mail, often maintain numerous residences for the sole purpose of cultivating, storing, maintaining, packaging and receiving shipments which contain narcotics and narcotics proceeds. I am aware based on my training and experience that persons involved with marijuana cultivation, marijuana trafficking and trafficking of marijuana proceeds will utilize their vehicle(s) to buy, sell, transport, mail and distribute contraband related to drug-trafficking, as well as further facilitate their ongoing drug-trafficking conspiracy.

25. Based on the facts set forth above, I believe Josh MAIER and others are involved in the large-scale distribution and sales of marijuana in/out of the Eastern District of California. I also believe that the vehicles used by Josh MAIER are being used to facilitate marijuana trafficking operations and to transport marijuana.

### Training and Experience Regarding Drug Trafficking and Drug Traffickers

26. As a result of my experience and training, I have learned that traffickers who deal in various quantities of controlled substances, or those that assist in that venture, maintain and tend to retain accounts or records of those transactions. Such records detail amounts outstanding, owed, or expended, along with records tending to indicate the identity of co-conspirators. These records may be kept on paper or contained in memory calculators or computers. It is also my experience that these traffickers tend to keep these accounts and records in their residence and in the areas under their control. It is my training and experience, that in the case of drug dealers, evidence is likely to be found where the dealers live. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986). It is also my training and experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time. United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991).

27. Based upon my experience and training, I have learned that drug traffickers often place their assets in names other than their own to avoid detection of those assets by law enforcement and the Internal Revenue Service (IRS); that those persons are commonly family members, friends, and associates who accept title of assets to avoid discovery and detection; that traffickers also often place assets in the ownership of corporate entities to avoid detection by law enforcement agencies and although these assets are in other individual(s) or corporate names, the traffickers continue to use these assets and exercise dominion and control over them. Typically, drug traffickers keep records of those registrations and transactions in their residence.

28. I have learned that large-scale drug traffickers often have on hand large amounts of United States currency in order to maintain and finance their ongoing business. It has been my

experience that drug traffickers often keep large sums of currency, caches of drugs, financial instruments, precious metals, jewelry, automobiles and other items of value and/or proceeds of drug transactions, including evidence of financial transactions related to obtaining, transferring, secreting or spending large sums of money acquired from engaging in the acquisition and distribution of controlled substances in their residence or in the areas under their control.

29.     In my experience, traffickers commonly have in their possession, that is, on their person, at their residence and in the areas under their control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Such firearms are used by drug violators to protect their illicit drug trafficking operations, and themselves against law enforcement and other drug violators because the illicit drug trade is an inherently dangerous illegal activity involving large amounts of valuable contraband and drug proceeds. Such property may include, but is not limited to, narcotics and other dangerous drugs, jewelry, narcotic paraphernalia, books, records, ledgers and quantities of currency.

30.     In my experience, traffickers commonly have in their possession, that is on their person, at their residences, and their vehicles, and in the areas under their control and which they have free and ready access to, drugs, including but not limited to in this case, marijuana, which they intend to distribute. It is my experience that these drug traffickers commonly utilize these areas (vehicles, residences, properties, etc.) as locations to conceal their narcotics from law enforcement.

31.     In my experience, drug traffickers may take or cause to be taken, photographs or videotapes of themselves, their associates, their property, and their product. Such traffickers often maintain photographs and/or videotapes at their residence or in the areas under their control.

32.     In my experience, large scale traffickers often maintain in their possession and at their residence fictitious identification, including but not limited to, driver's licenses, employment cards, insurance cards, social security cards, certificates of birth and passports which are obtained by the traffickers and utilized in an effort to prevent law enforcement identification of the traffickers and their drug trafficking activities.

33.     In my experience, drug traffickers often utilize vehicles in which to transport and distribute controlled substances in facilitation of their trafficking activities. It has also been my experience that traffickers will also utilize vehicles as locations in which to store controlled substances prior to distribution. During prior investigations, I have observed that drug traffickers will often utilize vehicles registered in the names of individuals other than themselves in an effort to avoid detection by law enforcement.

34.     In addition, drug traffickers often tend to attempt to legitimize their assets by establishing domestic and foreign businesses, by creating shell corporations, by utilizing bank haven countries and attorneys specializing in drafting and establishing such entities employed to "launder" proceeds derived from the distribution of controlled substances.

7

35. In establishing these entities, the traffickers often must travel to meetings in foreign countries as well as domestically. As a result of that travel, records are generated reflecting travel by commercial and private aircraft, Commercial Ocean and private vessels as well as common carrier(s).

36. Individuals involved in the distribution of marijuana often make, or cause to be made, pictures, videos, movies, compact discs, floppy discs, or other such items which are or contain photographic or digital images in order to memorialize their narcotics distribution, use, possession, or any other activities surrounding their drug-trafficking activities, and that such items often identify co-conspirators in their drug-trafficking activities.

37. It has been my experience in the past, and particularly in this case, that when suspects use mobile phones to communicate with cooperating individuals or undercover agents to set up their drugs deals, records relating to these activities will be found stored in the cellular telephone.

38. I know that drug traffickers use mobile phones to communicate with one another, either by voice or text message. Mobile phones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the phone numbers of other drug traffickers and the dates and times that they and/or the mobile phone user dialed one another's telephones. Mobile phones also contain in their memory a telephone book. This allows the user to store phone numbers and other contact information; the information stored in a phone used by a drug trafficker is evidence of the associations of the drug trafficker, some of which are related to his or her illegal business. Mobile phones also contain in their memory text messages sent, received, and drafted by the mobile user. The text message history of a narcotics trafficker's mobile phone can contain evidence of drug trafficking because it shows the communications or planned communications of a drug trafficker and the phone numbers of those with whom the drug trafficker communicated or intended to communicate. Mobile phones also have a voicemail function that allows callers to leave messages when the user does not answer. Drug traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity. Mobile phones can also contain other user-entered data files such as to-do lists, which can provide evidence of crime when used by a drug trafficker. Mobile phones can also contain photographic data files, which can be evidence of criminal activity when the user was a drug trafficker who took pictures of evidence of crime. Mobile phone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile phones.

39. As described above and in Attachments A-1, A-2, and A-3, this affidavit seeks permission to search and seize things that are related to the drug-trafficking conspiracy between MAIER, and his co-conspirators, in whatever form such things are stored. Based on my training and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

40.     It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators to whom I have spoken, that the items listed in Attachment B are items most often associated with the distribution of controlled substances, including marijuana, as well as the proceeds from such illegal operations.

41.     The facts set forth in this affidavit are known to me because of my personal participation in this investigation, through conversations with other agents and detectives who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained through this investigation. This affidavit is not an exhaustive enumeration of the facts that I have learned during the course of this investigation but, instead, are facts that I believe support a finding of probable cause to search the requested locations.

42.     Based on my experience and training, and after consulting with other law enforcement officers experienced in drug investigations, I know that individuals involved in drug dealing often maintain at their residences, vehicles, and their persons the items described in Attachment B. Individuals involved in drug dealing also often maintain paraphernalia for packaging, weighing, cutting, testing, distributing, and identifying controlled substances. Therefore, I am requesting authority to seize all items listed in Attachment B to this affidavit and incorporated here by reference.

### Request for Sealing and Delayed Notice

43.     I further request that the Court order that all papers in support of this application for a search warrant, including this affidavit, be sealed until further order of the Court. These documents discuss an ongoing investigation that is neither public nor known to all of the targets of the investigation. Based upon my training and experience, I know that criminals and people who associate with and assist criminals actively search for affidavits and search warrants on the internet, and disseminate them to other criminals as they deem appropriate. I expect to execute the search warrants applied for herein within 14 days of submission of this affidavit to the U.S. Magistrate Judge for review. I believe that premature disclosure of this affidavit and related documents would have a significant and negative impact on this ongoing investigation.

44.     For these same reasons, I also request, under 18 U.S.C. §§ 2705 and 3103a, that notice of this search warrant application be delayed for 14 days (and as may thereafter be extended) so that law enforcement can continue this investigation. I believe that providing notice to the persons whose property was seized would likely compromise this investigation and cause those individuals to destroy evidence and notify confederates of the investigation.

///

///

///

## Conclusion

45.  The facts in this affidavit demonstrate probable cause to believe that Josh MAIER and others co-conspirators are involved in the above-described offenses, and that evidence, fruits, and instrumentalities of these offenses, as described in Attachment B, are likely to be found at the locations listed in Attachments A-1 and A-2, and on the person of Josh MAIER.

46.  Accordingly, I respectfully request authority to search:

   a.  The residence located at **6660 Grizzly Flat Road, Somerset, California** (TARGET LOCATION 1), as further described in Attachment A-1.

   b.  The residence located at **1000 Harnish Mine Road, Somerset, California** (TARGET LOCATION 2), as further described in Attachment A-2.

   c.  The person of **Josh MAIER**, provided that he is located in the Eastern District of California at the time this search warrant is executed. (*See* Attachment A-3.)

   I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

Jason P. Bauwens
United States Postal Inspector

Sworn and subscribed to me on October 10, 2017

Hon. Deborah L. Barnes
United States Magistrate Judge

Approved as to form:

Timothy H. Delgado
Assistant United States Attorney

10

### Attachment A-1
### Places to be Searched

A.  **TARGET LOCATION 1** – The residence located at **6660 Grizzly Flat Road, Somerset, California.** The residence is located approximately ¼ mile east of Moonracer Drive, on Grizzly Flat Road. The driveway entrance to the residence is to the south of Grizzly Flat Road and is identifiable by a black metal gate bearing the numbers '6660'. The primary residence on the property is a single story, single family residence which is brown in color, with a gray shingle shingle roof. It has a metal roof extension off one side of the house. Research indicates that it is approximately 1,500 square feet, with 3 bedrooms and 2 baths. The rear of the property abuts Pano Lane and has a newer built wooden fence surrounding a marijuana cultivation site.




B. The place to be searched includes the residence, all rooms, attics, basements, and storage areas; all trash receptacles; and all surrounding grounds, garages, storage rooms, or outbuildings of any kind, attached or unattached, located on the premises. The place to be searched also includes all vehicles over which the owner, occupant, or resident of the aforementioned premises has dominion and control, as determined by the agents at the time of the execution of the search warrant by agent's observation of such persons operating or accessing the vehicle; DMV records show ownership or use of the vehicle; witness statements establishing ownership or use of the vehicle; or car keys to operate the vehicle found in the actual or constructive possession of such person found at the residence.

11

### Attachment A-2
### Places to be Searched

A.   **TARGET LOCATION 2** – The residence and property at **1000 Harnish Mine Road, Somerset, California.** The residence is accessed from driving on Omo Ranch Road and turning north onto Harnish Mine Road, either approximately 1/4 mile east of Chardonnay Lane or 1/2 mile west of Fairplay Road. The private, gated drive of Harnish Mine Road, ends at the target property. The primary residence is yellow in color with a gray composite roof. The residence is a single story, single family manufactured home. The front door of the residence faces to the north. Research indicates that it has 3 bedrooms and 2 baths and is approximately 1,600 square feet. Located near the residence to the south, is a small matching shed. Also located on the property, is a white travel trailer, a yellow garage, and two separate marijuana cultivation sites.



B.   The place to be searched includes the residence, all rooms, attics, basements, and storage areas; all trash receptacles; and all surrounding grounds, garages, storage rooms, or outbuildings of any kind, attached or unattached, located on the premises. The place to be searched also includes all vehicles over which the owner, occupant, or resident of the aforementioned premises has dominion and control, as determined by the agents at the time of the execution of the search warrant by agent's observation of such persons operating or accessing the vehicle; DMV records show ownership or use of the vehicle; witness statements establishing ownership or use of the vehicle; or car keys to operate the vehicle found in the actual or constructive possession of such person found at the residence.

## Attachment A-3
## Places to be Searched

A.  The person of **Josh MAIER**, provided that he is located in the Eastern District of California at the time this search warrant is executed.

B.  The search of **Josh MAIER** is to include all bags, backpacks, notes, receipts, computer, digital devices, and digital media located on her person or under her control, where the items specified in Attachment B may be found.

## Attachment B
### Items to be Seized

Law enforcement is authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses"), believed to be committed by Josh MAIER and his co-conspirators:

- 21 U.S.C. § 841(a)(1) – Distribution of, and Possessing with Intent to Distribute Controlled Substances.

- 21 U.S.C. § 843(b) – Unlawful Use of the U.S. Mails in Furtherance of Narcotics Trafficking.

- 21 U.S.C. § 846 – Attempt or Conspiracy to Distribute, or to Possess with Intent to Distribute Controlled Substances.

As further described in the Affidavit, the specific evidence, fruits, and instrumentalities of the Target Offenses for which agents may search includes:

1. Controlled substances, including marijuana, or items frequently used to distribute marijuana; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2. United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking;

3. Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4. Telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices which could be used to participate in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1);

5. Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6. Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone

numbers, communications, and illegal activities of associates in drug trafficking activities;

7. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9. Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10. Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records; and

11. All names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with mobile telephones that are associated with Josh MAIER during execution of the warrant. This authority to search such mobile telephones includes the following within each mobile telephone:

    A. Call history (incoming, outgoing, missed);
    B. Text messaging history (incoming, outgoing, drafts);
    C. Contacts list;
    D. Data screen or file identifying the telephone number associated with the mobile telephone searched;
    E. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;
    F. Voicemail;
    G. User-entered messages (such as to-do lists);
    H. Photographs; and
    I. Any passwords used to access the electronic data described above.

### #

AO 93 (Rev. 11/13) Search and Seizure Warrant

SEALED

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of: )<br>)<br>The residence located at 6660 Grizzly Flat Road, Somerset, )<br>California, as further described in Attachment A-1. )<br>)<br>) | Case No.<br>2:17sw0882 DB |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     EASTERN     District of     CALIFORNIA    
*(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A-1, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

    **YOU ARE COMMANDED** to execute this warrant on or before     October 24, 2017     *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☑ for   14   days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of              .

Date and time issued:   Oct. 10, 2017 11:20am               *[signature]*          
                                                                                          *Judge's signature*

City and state:     Sacramento, California         Hon. Deborah L. Barnes U.S. Magistrate Judge
                                                                                               *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|
| I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.<br><br>Subscribed, sworn to, and returned before me this date.<br><br>_____ _____<br>Signature of Judge                                         Date |